THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7                                    UNITED STATES DISTRICT COURT
                                    WESTERN DISTRICT OF WASHINGTON
8                                             AT SEATTLE

9    UNITED STATES OF AMERICA,                          CASE NO. CR22-0166-JCC

10                          Plaintiff,                  ORDER

11          v.

12   MATTHEW R. SCHLEY,

13
                            Defendant.
14

15          This matter comes before the Court on Defendant's motion to suppress (Dkt. No. 36).[1]

16   Having thoroughly considered the parties' briefing and the relevant record, the Court DENIES

17   the motion for the reasons explained herein.

18   I.     BACKGROUND

19          Defendant is charged with Possession of a Controlled Substance with Intent to Distribute.

20   (Dkt. No. 17.) He was arrested for this crime in April 2022. (Dkt. No. 36-1 at 2.) At the time,

21

22          [1] Defendant so moved through Court-appointed counsel. (Dkt. No. 36 at 12.) Before the
     original noting date, though, and at Defendant's request, the Court discharged counsel and
23   provided Defendant with replacement counsel. (See Dkt. Nos. 58 at 1, 59 at 1.) Then, to allow
     new counsel time to weigh in, the Court renoted the motion. (See Dkt. No. 59.) That counsel
24   prepared Defendant's final brief in support of the motion. (See Dkt. No. 60 (reply brief).) In the
     meantime, Defendant wrote to the Court, asking to withdraw the motion to give new counsel the
25   opportunity to separately move. (See generally Dkt. No. 61.) As Defendant was represented at
     the time, the Court declined the request. See CrR 1(a) (adopting LCR 83.2(b)(5)). Regardless, the
26   Court will consider the entirety of the final brief, see infra note 5. So, effectively, Defendant is
     getting what he asked for.

Defendant was on supervised release in another matter. *See U.S. v. Schley*, Case No. CR19-0247-JCC, Dkt. No. 79 (W.D. Wash. 2019). The April 2022 arrest followed a *Terry*[2] stop where the police officer, upon identifying Defendant, learned that Defendant had a felony federal warrant in the case referenced above. (Dkt. No. 62 at 3.)[3] Then, during the resulting search, the officer discovered blue pills, a white crystal substance, and other items. (*See* Dkt. No. 46 (bodycam recording at 1:21:00–1:36:20).)[4] According to the Government, those substances contained fentanyl and methamphetamine. (Dkt. No. 48 at 3.)

Defendant moves to suppress this evidence, which the Government may offer in this matter. (*See generally* Dkt. No. 36.) Defendant argues that the *Terry* stop was unlawful, as was the officer's later search. (*See generally* Dkt. Nos. 36, 60.) Defendant seeks exclusion of the evidence or, at a minimum, a hearing[5] to resolve contested facts regarding both issues. (Dkt. No. 60 at 6.)

## II.    DISCUSSION

The Fourth Amendment protects persons against unreasonable searches and seizures. U.S. Const. amend. IV. In general, evidence from an unlawful warrantless search cannot be presented at trial. *U.S. v. Richardson*, 821 F. App'x 750, 752 (9th Cir. 2020) (citing *Murray v. U.S.*, 487 U.S. 533, 536–37 (1988)). This includes evidence representing the fruits of an unlawful seizure, such as an unlawful *Terry* stop. *U.S. v. Rodriguez*, 471 F. Supp. 3d 1049, 1061 (D. Idaho 2020).

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

[3] The Government inadvertently failed to include the declaration and some of the exhibits referenced in and supporting its response brief. Once the Court contacted the Government regarding the oversight, the Government quickly filed the declaration and remaining exhibits. Defendant was notified of this oversight and did not object to the late filing.

[4] In opposition to Defendant's motion, the Government provided the Court with a recording of bodycam footage of the incident, as recorded by Algona Police Officer Hector Aponte. This footage is referenced throughout this order, with a timestamp for hours, minutes, and seconds. The entire video is just over two hours long.

[5] Because the hearing request came from newly appointed counsel, *see supra* note 1, the Court will consider it, even though it first came on reply. (*See* Dkt. No. 60 at 6.)

1    Defendant asserts that the officer here unlawfully extended the duration of what was

2    otherwise a lawful *Terry* stop to demand his identification, resulting in the discovery of the

3    warrant. (Dkt. Nos. 36 at 5–7, 60 at 1–6.) He further argues that the discovery of illicit

4    substances in the resulting search must be suppressed because it represents the fruits of a

5    poisoned tree. (*Id.*) Alternatively, he argues that, because the officer first removed the fanny pack

6    containing the evidence from Defendant, and secured it away, *before* searching it, the search is

7    not exempt from the warrant requirements. (Dkt. Nos. 36 at 7–9, 60 at 1–6.)

8    **A.    *Terry* Stop**

9    The arresting officer first encountered Defendant trespassing on private property—a

10   greenbelt behind some homes. (Dkt. No. 62 at 2.) The parties agree that this was a valid basis for

11   the officer's initial contact with Defendant, *i.e.*, the initial *Terry* stop. (*See generally* Dkt. Nos.

12   36, 48, 60.) But Defendant argues that, once the officer assisted Defendant in repairing his bike,

13   and told him to exit the area, the opportunity for further inquiry ended. (Dkt. Nos. 36 at 4–6, 60

14   at 2–3.) Accordingly, the officer's later questioning and, most importantly, his request for

15   Defendant's identification, was an unlawful seizure. The Court disagrees.

16   First, the Court does not find that a seizure of Defendant, *i.e.*, a *Terry* stop, even occurred

17   *before* the officer asked Defendant to accompany him to his patrol vehicle. (*See* Dkt. No. 46

18   (bodycam recording at 0:05:05).) Prior to this, the officer simply assisted Defendant in fixing his

19   bicycle, chatted a bit and, once Defendant got the bike rolling, told him to exit the property. (*Id.*

20   (bodycam recording at 0:00:00–0:05:05).) This lasted no more than a few minutes. The officer

21   then requested identification from Defendant and called it in. (*Id.* (bodycam recording at

22   0:04:30).) When the officer could not understand all that was said, he asked Defendant to

23   accompany him to his patrol vehicle. (*Id.* (bodycam recording at 0:05:05).) At a minimum,

24   though, the officer understood the dispatcher to say that Defendant had some sort of a federal

25   warrant and was a risk to the officer's safety. (Dkt. No. 62 at 3.) This is, undoubtedly, reasonable

26   articulable suspicion supporting a *Terry* stop. And this is roughly when the stop began.

     Second, even if the *Terry* stop began prior to that time, the officer had reasonable

ORDER
CR22-0166-JCC
PAGE - 3

articulable suspicion of a possible crime, given Defendant's location. In making this assessment, the Court looks to the totality of the circumstances. *U.S. v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). And it views facts from the officer's perspective. *Id.* According to the officer, he first encountered Defendant in a greenbelt bordering homes which had recently been burgled. (Dkt. No. 62 at 2.) It was also near known drug houses and an area subject to squatters. (*Id.*) Perhaps not surprisingly, the officer asked Defendant for his identification, and, after Defendant informed the officer that he was recently released from prison, the officer asked Defendant what he did for work and where he was staying. (*Id.*; *see also* Dkt. No. 46 (bodycam recording at 0:01:30–0:04:40).) These are valid questions, given the circumstances, as was the officer's request for identification. *See U.S. v. Arvizu*, 534 U.S. 266, 273 (2002) (a court must allow the officer to draw on their own experience and training to make permissible inferences).

Accordingly, the Court FINDS the *Terry* stop here, *regardless* of when it began or ended, was lawful.

### B.      Subsequent Searches

After the officer confirmed Defendant's warrant status, which took some time due to communication issues, the officer placed Defendant under arrest. (*See* Dkt. No. 46 (bodycam recording at 1:22:00–1:23:30).) He handcuffed Defendant, searched his person, and removed a fanny pack from Defendant's waist. (*See id.* (bodycam recording at 1:23:00–1:35:00).)[6] The officer searched it shortly thereafter. (*See id.* (bodycam recording at 1:28:00–1:35:00).)[7] Defendant claims this was unlawful. (Dkt. Nos. 36 at 7–11, 60 at 4–6.) He argues that the warrantless search exception for a search incident to arrest and/or an inventory search does not apply because (a) Defendant was no longer physically attached or proximate to the fanny pack and (b) its contents were secured with padlocks. (Dkt. No. 36 at 7–11, 60 at 4–6.) Again, the

---

[6] Defendant had frequent unsupervised control of the item prior to this point. (*See* Dkt. No. 46 (bodycam recording at 0:05:05–1:35:00).)

[7] Defendant was also carrying a backpack. (Dkt. No. 62 at 4.) While the officer later searched this item as well, Defendant has not put the propriety of that search at issue. (*See generally* Dkt. Nos. 36, 60.)

1   Court disagrees.

2         An officer may conduct a warrantless search of a person incident to their arrest. *Arizona*

3   *v. Gant*, 556 U.S. 332, 339 (2009). This includes the area proximate to the person, if within their

4   control, although that search must be limited in scope to weapons and/or evidence of the alleged

5   crime for which the individual is subject to arrest. *Id.* Defendant posits that, since the officer

6   removed the fanny pack from Defendant's waist and then secured him *before* searching it, a

7   search warrant is required. (Dkt. No. 36 at 7–9.) Meaning, the search no longer qualifies as a

8   search incident to arrest. (*Id.*) Further, because Defendant was arrested based on an arrest

9   warrant—not probable cause of committing a contemporaneous crime—the officer could only

10   search it for weapons. (*Id.*) Defendant presents an overly narrow view of the caselaw. If a

11   warrantless search incident to arrest of a wallet or cigarette package is lawful, *see U.S. v.*

12   *Passaro*, 624 F.2d 938, 944 (9th Cir. 1980), so too is a fanny pack. Regardless, it was

13   reasonable for the officer to search the fanny pack for weapons. *See Chimel v. California*, 395

14   U.S. 752, 763 (1969) (allowing a search of the area within an arrestee's control for weapons),

15   given the multiple knives and zapper or taser the officer previously recovered from Defendant.

16   (*See id.* (bodycam recording at 0:05:05–1:35:00).)

17         As to the fact that the fanny pack and its contents were locked[8]—this is only an issue if

18   the Government need rely on the inventory exception for warrantless searches. And here, the

19   search was also lawful under the inventory search exception. Generally, an inventory search

20   must follow a policy or practice to avoid "general rummaging in order to discover incriminating

21   evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). Here, it appears that the purpose of the search

22   of the fanny pack, at least in part, was to safeguard Defendant's property. *See U.S. v. Johnson*,

23   889 F.3d 1120, 1126 (9th Cir. 2018). It followed the officer's inventory of Defendant's cash

24

25

26

---

[8] The officer used what appears to be a pair of pliers to break the locks. (*See* Dkt. No. 46 (bodycam recording at 1:31:00–1:33:00).)

from his person and his wallet.[9] (*See* Dkt. No. 46 (bodycam recording at 1:28:00–1:33:00).) The search was done in accordance with policy "or established routine." *Wells*, 495 U.S. at 4. The Algona Police Department requires that a "custody search" of an individual's "property" be performed "immediately after his/her arrest" and that care be taken "in handling the property . . . to avoid discrepancies or losses." (Dkt. No. 36-5 at 2–3.) The officer indicated to Defendant, when Defendant told the officer that he did not consent to the officer's search of his fanny pack, that the officer did not "need permission anymore . . . you are in custody . . . I have to check it out." (*See* Dkt. No. 46 (bodycam recording at 1:26:00–1:26:20).)

Accordingly, the Court FINDS that under either the search incident to arrest or the inventory search exception, the search at issue was lawful.[10]

## C.      Evidentiary Hearing

Defendant asks for an evidentiary hearing "to make a proper record," arguing there are a "number of contested factual matters." (Dkt. No. 60 at 6.) But this is not enough. Defendant's request must be supported by contested facts. *U.S. v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Defendant provides the Court unsupported assertions regarding the officer's credibility. (*See* Dkt. No. 60 at 1–4.) However, "[a]n evidentiary hearing . . . need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *Howell*, 231 F.3d at 620. Based on the bodycam video available to the Court, which documents the entire encounter, including the *Terry* stop, the arrest, and the searches, (*see* Dkt. No. 46 (bodycam recording at 0:05:05–1:45:00)), the

---

[9] Notably, Defendant does not challenge the propriety of the search of his wallet, even though the circumstances between the wallet and fanny pack are nearly identical. (*See generally* Dkt. Nos. 36, 60.)

[10] The Court further notes that, even if the search were not lawful, the exclusionary rule would not apply here. Based on the Court's review of the bodycam video, it can find no "deliberate, reckless, or grossly negligent" misconduct. *Herring v. U.S.*, 555 U.S. 135, 144 (2009). Quite the opposite, in fact. The officer appeared non-combative, respectful, diligent, and thorough. (*See* Dkt. No. 46 (bodycam recording at 0:00:00–1:45:00).) Moreover, Defendant was on federal supervision at the time for a prior crime, *Schley*, CR19-0247-JCC, Dkt. No. 79. His privacy interests were, therefore, significantly reduced. *See Davis v. U.S.*, 564 U.S. 229, 239 (2011) (discussing the competing interests of the exclusionary rule).

1    Court cannot conceive of what facts Defendant could possibly contest.

2  **III.     CONCLUSION**

3         For the foregoing reasons, Defendant's motion to suppress (Dkt. No. 36) is DENIED.

4

5         DATED this 28th day of June 2023.

6

7

8         _____

9         John C. Coughenour
          UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26